UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYL PATRICK IRLAND,                      Case No. 11-14787

             Plaintiff,                Victoria A. Roberts
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge
             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 11)**

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On October 31, 2011, plaintiff Daryl Patrick Irland filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits after July 18, 2007.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and

Local Rule 72.1(b)(3), District Judge Victoria A. Roberts referred this matter to

the undersigned for the purpose of reviewing the Commissioner's decision

denying plaintiff's claim for a period of disability and disability insurance

benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary

judgment.  (Dkt. 9, 11).

**B.     Administrative Proceedings**

Plaintiff filed the instant administrative claim on September 14, 2007,
alleging that he became unable to work as of May 18, 2006.  (Dkt. 7-5, Pg ID 106-
112).  Plaintiff's claim was denied by the state Disability Determination Service
("DDS") and plaintiff requested a hearing before an Administrative Law Judge
("ALJ").  (Dkt. 7-4, Pg ID 68-71).  On November 18, 2009, ALJ Linda Halperin
held a hearing at which plaintiff appeared with counsel and testified.  (Dkt. 7-2, Pg
ID 31-48).  In a decision dated March 26, 2010, the ALJ found that plaintiff was
disabled beginning on May 18, 2006, but was no longer disabled as of July 19,
2007, because his condition had improved.  (Dkt. 7-3, Pg ID 53-66).  Plaintiff
requested a review of this decision on July 1, 2010.  (Dkt. 7-2, Pg ID 30).  The
ALJ's decision became the final decision of the Commissioner when the Appeals
Council, on August 26, 2011, denied plaintiff's request for review.  (Dkt. 7-2 Pg
ID 26-29); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).
Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. §
405(g).

In light of the entire record in this case, I suggest that plaintiff's motion for
summary judgment be **GRANTED in part** and that defendant's motion for
summary judgment be **DENIED in part** and that the case be **REMANDED** to the
Commissioner for further proceedings.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 42 years old at the time of the administrative hearing.  (Dkt 7-2, Pg ID 37).  Plaintiff testified that his relevant work history included approximately 14 years as a roofer.  (Dkt 7-2, Pg ID 39).  The ALJ concluded that plaintiff was "disabled" from May 8, 2006 to July 18, 2007,[1] and that on July 19, 2007, medical improvement occurred related to plaintiff's ability to work, and that plaintiff has been able to perform substantial gainful activity from that date through the date of the ALJ's decision.  (Dkt. 7-2, Pg ID 57).  The ALJ concluded that plaintiff's disability ended on July 19, 2007.  (*Id.*).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the period since his alleged onset date of May 18, 2006, the date plaintiff fell off a second story roof and sustained a severe right tibial pilon fracture with right ankle pain, deformity, and swelling.  (Dkt. 7-2, Pg ID 60; Dkt. 7-7, Pg ID 182, 193; Dkt. 7-8, Pg ID 258).  The next day, Dr. Michael Swords performed surgery on plaintiff due to a right intra-articular distal tibia fracture with an

---

[1] The ALJ refers to both "May 8, 2006" and "May 18, 2006" in her opinion as the onset date of plaintiff's claimed disability.  However, the records confirm that plaintiff was injured on May *18*, 2006, and that the ALJ's reference to May 8, 2006 is incorrect.  Accordingly, the undersigned will refer to May 18, 2006 as the disability onset date in this opinion.

associated fibular fracture. (Dkt. 7-7, Pg ID 182). The surgery consisted of an application of a spine fixator to the right leg across the ankle, an open reduction internal fixation of the lateral malleolus, and a four compartment fasciotomy of the lower right leg. *Id.*

Plaintiff had an additional surgery the next day, consisting of closure of his fasciotomy. (Dkt. 7-7, Pg ID 181). Plaintiff received in-patient care until May 24, 2006, when he was discharged with pain medication, an antibiotic, and instructions to elevate his lower leg when he was not standing. (Dkt. 7-7, Pg ID 181, 183, 186-92).

Dr. Swords reevaluated plaintiff for additional surgery in June 2006, consisting of an open reduction internal fixation. (Dkt. 7-8, Pg ID 257). Dr. Swords advised plaintiff to continue with elevation. (*Id.*) Dr. Swords again evaluated plaintiff in September 2006, and noted minimal swelling, a well-healed incision, improved range of motion and full sensation. (Dkt. 7-8, Pg ID 256).

Plaintiff next saw Dr. Swords for evaluation of his right tibia pilon fracture in October 2006. (Dkt. 7-8, Pg ID 254). Dr. Swords noted that Plaintiff had significant bone loss and had been using a bone stimulator. *Id.* Plaintiff had reduced swelling and ulceration and an eschar on the back of his heel. *Id.* Dr. Swords ordered a CT scan of plaintiff's leg to assess bone loss, and the CT scan showed a comminuted fracture of the distal tibia with some medial displacement

of the major bone fragments, multiple bony density in the medullary cavity of the distal tibia, evidence of satisfactory healing of the distal fibular fracture, and osteopenia of the bony structures in the hindfoot and midfoot.  (Dkt. 7-7, Pg ID 178).

In January 2007, Dr. Swords performed an irrigation and debridement of a traumatic ulceration of plaintiff's right heel.  (Dkt. 7-7, Pg ID 174-75).  Following the surgery, it was determined that plaintiff's right tibia fracture had a non-union requiring additional surgery.  (Dkt. 7-7, Pg ID 141).  Plaintiff was hospitalized in February 2007 for a repair of the non-union right tibia fracture with a bone graft.  *Id*.  The day after the surgery, plaintiff became hypertensive, tachycardiac, and hypoxic.  *Id*.  A bilateral ultrasound revealed deep venous thrombosis in plaintiff's right leg and a CT scan of plaintiff's chest was positive for an embolism in plaintiff's left pulmonary artery.  (Dkt. 7-7, Pg ID 164-65).  Plaintiff was discharged three days after admission with instructions to continue using anti-coagulant drugs, use a walker when ambulating and not bear weight on his right leg, and elevate his right leg when not walking.  (Dkt. 7-7, Pg ID 142).

In April 2007, Dr. Swords evaluated plaintiff and noted that he was doing well.  (Dkt 7-8, Pg ID 210).  Plaintiff's heel ulcer had healed and an x-ray showed that plaintiff's hardware was in place and the bone graft was "healing nicely."  *Id*.  Dr. Swords recommended plaintiff put 25% of his body weight on his right leg for

two weeks and 50% for the following two weeks.  *Id.*  Dr. Swords also noted that

plaintiff should continue off work until July 12, 2007 (Dkt. 7-8, Pg ID 209).

Dr. Swords evaluated plaintiff in May 2007 and noted that plaintiff's leg

was less swollen, he had decreased pain, and had been putting 50% of his weight

on his right leg.  (Dkt. 7-8, Pg ID 208).  An x-ray showed plaintiff's fracture was

"healing nicely" and Dr. Sword recommended the plaintiff progress with his

weight bearing and physical therapy.  *Id.*  Dr. Swords also ordered a lightweight

wheelchair with a leg elevator for plaintiff for one year.  (Dkt. 7-8, Pg ID 204).

Plaintiff saw Dr. Swords on July 17, 2007, and reported that he was doing

well and was back to full weight bearing and attending physical therapy.  (Dkt. 7-

8, Pg ID 201).  Dr. Swords recommended plaintiff continue his activities as

tolerated, provided him with a note stating that he should perform sit-down work

only for six months, and instructed plaintiff to return in six months.  (Dkt. 7-8, Pg

ID 200-01).

Plaintiff returned to Dr. Swords in January 2008 and complained of

increased joint pain that worsened when he had been on his right leg for a while

and then sat down.  (Dkt. 7-9, Pg ID 314).  Plaintiff had moderate swelling and x-

rays showed healing of the metadiaphyseal segment.  *Id.*  Dr. Swords stated that

plaintiff had post-traumatic arthritis and suggested hardware removal.  *Id.*  Dr.

Swords examined plaintiff again two months later and noted that plaintiff's right

pilon had healed, and discussed the possibility of a fusion in the future.  (Dkt. 7-9, Pg ID 313).  Dr. Swords also reported that he reviewed with plaintiff five occupations that were sent to him by plaintiff's "rehab people." *Id.*

At step two, the ALJ found that plaintiff's impairment, a non-union of a fracture of the lower tibia, was "severe" within the meaning of the second step. (Dkt. 7-2, Pg ID 60).  At step three, the ALJ found that the severity of plaintiff's impairment met the criteria of section 1.03 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d)), and that plaintiff was disabled from May 18, 2006 through July 18, 2007.  (Dkt 7-2, Pg ID 61).  The ALJ found that plaintiff's statements concerning his limitations from May 18, 2006 through July 18, 2007 were "generally credible." *Id.*

The ALJ then found that plaintiff's disability ended and medical improvement of plaintiff's disability occurred on July 19, 2007.  (Dkt. 7-3, Pg ID 61).  Plaintiff's treating physician, Dr. Swords, opined that plaintiff could return to work as of July 18, 2007, with a restriction to a sit-down job only for the next six months.  *Id.*  The ALJ noted that Dr. Swords observed that plaintiff was doing well, was back to full weight bearing, and was undergoing physical therapy at that time.  *Id.*

Dr. B.J. Page, II, a board certified orthopaedic surgeon, evaluated plaintiff for his work capacity on behalf of an insurance company in August 2007.  (Dkt 7-

7

9, Pg ID 299-304).  Plaintiff complained of pain when he was on his ankle for a short period of time (a 3/10), and loss of motion and swelling.  (Dkt. 7-9, Pg ID 300).  X-rays showed healed fibula and tibula fractures stabilized with plates and screws, an abundance of callus formation and a bone graft.  (Dkt. 7-9, Pg ID 303).  Dr. Page diagnosed status post pilon fracture and multiple surgeries in the right foot and ankle, status post right heel ulcer, and athrofibrosis and tenofibrosis in the right foot and ankle.  *Id.*  Dr. Page opined that the plaintiff had evidence of "post fracture disease" with a loss of ankle motion, swelling, atrophy, and areas of cutaneous nerve dysfunction.  *Id.*  Dr. Page also opined that plaintiff may not reach maximum medical improvement for another six months and that plaintiff would likely continue to have some loss of motion, weakness, and intermittent swelling.  (Dkt. 7-9, Pg ID 304).  Dr. Page opined that plaintiff is able to work and  could return to work in a "sit-down job" and should avoid walking on uneven surfaces. *Id.*

Plaintiff also presented to Dr. Paul LaClair for further examinations regarding his right ankle pain in January, March and September 2009.  (Dkt. 7-9, Pg ID 316-18).  Plaintiff complained of standing for more than one to one-and-a-half hours per day, and stated that he has had some vocational rehabilitation and had applied for jobs, but with no success.  *Id.*  Dr. LaClair prescribed pain medication, an anti-inflammatory medication, and physical therapy, and opined

that plaintiff was limited to lifting no more than ten pounds, sedentary work only,

no walking on uneven terrain, no ladder climbing, and no squatting, kneeling, or

crawling. *Id.* Dr. LaClair opined that the work restrictions were permanent. *Id.*

The ALJ then concluded that beginning on July 19, 2007, plaintiff no longer

met or medically equaled one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (20 C.F.R. 404.1594(f)(2)) because plaintiff's non-union

fracture had healed and he was fully weight-bearing and thus no longer met the

criteria for listing 1.03. (Dkt. 7-3, Pg ID 61-62). The ALJ concluded that the

medical improvement that occurred is related to plaintiff's ability to work because

he no longer has an impairment that meets or equals a medical listing. *Id.*

The ALJ then proceeded to the next step and found that, beginning on July

19, 2007, plaintiff has had the residual functional capacity ("RFC") to perform the

full range of sedentary work, as defined in 20 C.F.R. 404.1567(a), such that

plaintiff is limited to lifting/carrying no more than 10 pounds, no walking on

uneven terrain, no ladder climbing, and no squatting, kneeling or crawling. (Dkt.

7-3, Pg ID 62). The ALJ found that plaintiff's testimony as to the intensity,

persistence and limiting effects of his impairment was not credible. *Id.* The ALJ

noted plaintiff testified to undergoing seven surgeries, including debridement of

ulcers on his heel and four major reconstructive surgeries on his right leg. *Id.*

Plaintiff also testified he takes pain pills as needed, can lift 20 to 30 pounds, and

walk 100 to 200 yards before needing to take a break. *Id.* The ALJ also relied on the treating and examining physicians' statements that plaintiff was doing well with full weight bearing and that plaintiff could return to work with a restriction to a sit-down job only for the next six months, or be placed on permanent work restrictions which included a 10 pound maximum life, sedentary work only, no walking on uneven terrain, no ladder climbing, and no squatting, kneeling, or crawling. (Dkt 7-3, Pg ID 62-63). The ALJ then concluded, "[t]aking into account the [plaintiff's] limited mobility and use of his right ankle" that the plaintiff "is limited to walking/standing no more than 1 and a half hours out of an 8 hour work day; no walking on uneven terrain; no ladder climbing; and no squatting, kneeling, or crawling," and that plaintiff "is limited to lifting and carrying no more than 10 pounds." *Id.* The ALJ noted that she gave "[s]ignificant weight" to Dr. Swords' opinion (as the long-term treating physician) and weight to Dr. Page's and Dr. LaClair's opinions as experts in the field of orthopedics. *Id.*

The ALJ then found that plaintiff has been unable to perform his past work as a roofer since July 19, 2007, which required a physical residual functional capacity for heavy work. (Dkt. 7-3, Pg ID 63). The ALJ noted that the plaintiff was 40 years old as of July 19, 2007, the date plaintiff's disability ended, and that plaintiff has a limited education (through 10th grade) and is able to communicate in English. *Id.*

The ALJ then concluded that transferability of job skills was not material to the disability determination because "applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills." *Id.*  The ALJ then ultimately concluded that plaintiff's disability ended on July 19, 2007, and that based on a residual functional capacity for "the full range of sedentary work," and considering plaintiff's age, education and work experience, "a finding of 'not disabled' is directed by Medical-Vocational Rule 201.25."  (Dkt. 7-3, Pg ID 63-64).

### B.    Plaintiff's Claims of Error

Plaintiff's first claim of error is that the ALJ erroneously determined that plaintiff no longer met the Listing 1.03 and thus erroneously concluded that plaintiff's disability stopped July 19, 2007.  Plaintiff argues that he cannot "ambulate effectively" because plaintiff's doctor has advised him to use a cane, which renders him disabled because he would not be able to use his hands while holding onto the cane.

Plaintiff also argues that the ALJ erroneously determined that plaintiff could perform a "full range of sedentary work."  Plaintiff claims that he is limited in even sedentary work due to the fact he has to elevate his leg during the day and sit down most of the day.  Plaintiff argues that the ALJ's determination as to plaintiff's residual functional capacity does not reflect the plaintiff's need to

elevate his foot to relieve swelling, that his doctor's have advised him to use a cane when walking, and that he has some pain control through activity modification.

Plaintiff also argues that the ALJ improperly placed "great weight" on Dr. Page's evaluation. Plaintiff argues that although Dr. Page is an orthopaedic surgeon, he specializes in hand surgery, not foot surgery. Plaintiff further complains that Dr. Page only evaluated plaintiff one time. Plaintiff argues that Dr. Page noted that plaintiff had not reached maximum medical improvement at the time of the examination and opined that he may not reach maximum medical improvement for another six months, but that Dr. Page never reevaluated plaintiff.

Finally, Plaintiff argues that the ALJ improperly based his disability finding on the Medical-Vocational Guidelines and that a vocational expert was necessary to offer evidence about plaintiff's restrictions and his ability to perform a significant number of jobs in the national economy. Plaintiff also claims that the ALJ erred in finding that the transferability of job skills is not material to the disability determination. Plaintiff argues that as a roofer with a ninth grade education, there are no transferable skills from his past work.

Based on the foregoing, plaintiff asks that the case be remanded for an award of continued benefits, or remanded for further proceedings, specifically to have another hearing with a vocational expert present to evaluate the medical

records and testify as to the vocational aspects of the case.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner contends that substantial evidence supports the ALJ's finding that plaintiff's right foot condition did not meet or equal a listing after July 18, 2007.  The Commissioner argues that Listing 1.03 pertains to reconstructive surgery or surgical arthrodesis of a major weight bearing joint and requires that the claimant have the inability to ambulate effectively, as defined in 1.00B(2)(b), and that return to effective ambulation did not occur, or was not expected to occur, within 12 months of onset.  Listing 1.00B(2)(b)(1) defines "inability to ambulate effectively" as "an extreme limitation of the ability to walk" and is generally defined as having insufficient lower extremity functioning to permit ambulation without the use of a handheld device that limits the functioning of both upper extremities.  The Commissioner argues that, even assuming plaintiff's testimony is true that he could not ambulate effectively because his doctor told him to use a cane and use of a cane would preclude him from being able to use his hands, plaintiff has failed to show that he had "an extreme limitation of the ability to walk."  The Commissioner noted that plaintiff testified he could walk up to 200 yards before needing a break and did not use a cane.  The Commissioner further noted that even if plaintiff did use a cane to walk, plaintiff would not be prevented from using both of his hands so as meet the criteria of Listing 1.03.

13

The Commissioner next argues that substantial evidence supports the ALJ's findings as to plaintiff's residual functional capacity.  The Commissioner argues that the ALJ gave proper weight to Dr. Page's opinion as a board certified orthopaedic surgeon.  The Commissioner also noted that the ALJ gave significant weight to Dr. Swords' opinion as plaintiff's treating physician, and that Dr. Swords and Dr. Page similarly opined that plaintiff was limited to a sit-down job for six months.  The Commissioner further argued that the ALJ was not required to credit plaintiff's claimed need to elevate his leg because plaintiff pointed to no evidence other than his own testimony that such a limitation was required.  Thus, the ALJ properly found that plaintiff's subjective complaints were not credible.

Finally, the Commissioner argues that the ALJ properly applied the Medical-Vocational Guidelines to find plaintiff not disabled after July 18, 2007.  First, the Commissioner argues that the transferability of plaintiff's skills from his past work was irrelevant to the ALJ's determination as to whether plaintiff was disabled under the Grid rules.  The Commissioner argues that Grid rules 201.24 through 201.26 pertain to claimants, such as plaintiff, who are between 18 and 44 years old, have a limited education, and are capable of sedentary work, and cover every level of previous work experience, from none to skilled work with transferrable skills.  Every one of these Grid rules provides a finding of not disabled.  Second, the Commissioner also argues that even though the ALJ

14

erroneously found plaintiff not disabled by *direct* application of the Grid (which is not allowed when an ALJ finds that a claimant has both exertional and nonexertional impairments (as in this case)), that error is harmless.  The Commissioner argues that the non-exertional limitations would not significantly reduce the occupational base, based on Social Security Ruling ('SSR") 96-9p, and thus the ALJ *would have* found plaintiff not disabled even *if* she had properly used the Grid as a framework.  The Commissioner concludes that it was not necessary for a vocational expert to be present at the hearing because the ALJ did not credit all of the limitations plaintiff alleged in finding his RFC.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

15

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become

18

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe

impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

20

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

If a disability determination has been made, the Commissioner must also determine whether that disability continues through the date of the decision. *See* 20 C.F.R. § 404.1594(f). "Once an ALJ finds a claimant disabled, he must find a medical improvement in the claimant's condition to end his benefits, a finding that requires 'substantial evidence' of a 'medical improvement' and proof that he is 'now able to engage in substantial activity.'" *See Niemasz v. Barnhart*, 155 Fed. Appx. 836, 840 (6th Cir. 2005) (quoting 42 U.S.C. § 423(f)(1)).

In making this determination, the ALJ must follow an eight-step evaluation process. *See* 20 C.F.R. § 404.1594(f).

> Step One: If the claimant is engaged in substantial gainful employment, he is no longer disabled.
>
> Step Two: If the claimant is not working, does his impairment(s) meet or equal a listed impairment? If yes, disability continues.

Step Three: If the claimant's impairment does not meet or equal a listed impairment, has there been any medical improvement in his impairments?  If yes, proceed to Step Four.  If no, then proceed to Step Five.

Step Four: If there has been medical improvement, is it related to the claimant's ability to work?  If yes, proceed to Step Six.  If no, proceed to Step Five.  Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities.  *See* 20 C.F.R. § 404.1594(b)(3)).

Step Five: If there is no medical improvement, or if the medical improvement is not related to the claimant's ability to work, then do one of the exceptions to medical improvement at 20 C.F.R. §§ 404.1594(d) or (e) apply?  If none of them apply, disability will continue.  If one of the first group applies, then proceed to Step Six.  If one of the second group of exceptions applies, then disability will end.

Step Six: If medical improvement is related to the claimant's ability to work, are the current impairments in combination severe?  If not, then disability is deemed to have ended.  If yes, then proceed to Step Seven.

Step Seven: If the claimant's impairments are severe, the Commissioner will assess the claimant's residual functional capacity and consider whether he can do past work.  If yes, then disability will be found to have ended.

Step Eight: If the claimant cannot do his past work, the Commissioner will determine whether he can do other work given his residual functional capacity, age, education, and experience.  If yes, the disability will be found to have ended.  If not, disability will be found to have continued.

20 C.F.R. § 404.1594(f); *see also Niemasz*, 155 Fed. Appx. at 840 (noting that this

sequential process applies in closed benefits cases such as this, where the finding of disability and termination of disability are rendered in the same decision).

The claimant is not entitled to a presumption of continuing disability. *See Cutlip v. Sec'y Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition." *Id.* Nevertheless, the burden of proof to establish that a claimant has experienced a medical improvement which renders him capable of performing substantial gainful activity lies with the Commissioner. *See Kennedy v. Astrue*, 247 Fed. Appx. 761, 764-65 (6th Cir. 2007). Thus, for the ALJ's finding to be affirmed, there must be substantial evidence showing that plaintiff experienced a medical improvement such that he would be able to engage in substantial gainful activity.

### C.    Analysis and Conclusions

#### 1.    The ALJ Provided an Inadequate Meets or Medically Equals Analysis

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that he considers disabling. 20 C.F.R. § 404.1525(a) (2010); *see also*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If plaintiff's condition meets or equals the severity of a listed impairment, that

23

impairment is conclusively presumed disabling.  *See Bowen v. Yuckert,* 482 U.S. 137, 141 (1987).  Medical equivalence to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532-33 (1990) (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).  The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." *Caviness v. Apfel*, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

Listing 1.03 specifically requires, "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, *with inability to ambulate effectively*, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.03 (emphasis added).  The regulations describe inability to ambulate

24

effectively as follows:

> Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.,* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b).  The regulations further provide:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*

The ALJ found that plaintiff met Listing 1.03 from May 18, 2006 through July 18, 2007, based on plaintiff's testimony about his impairments during that time period (which the ALJ found credible) and the medical records.  (Dkt. 7-3, Pg

ID 61).  The ALJ then found that, beginning on July 19, 2007, plaintiff has not had

an impairment that meets or medically equals a listed impairment because

"plaintiff's non-union fracture had healed and he was fully weight-bearing, such

that he no longer met the criteria for listing 1.03." (Dkt. 7-3, Pg ID 61-62).  The

ALJ offered no further evaluation or explanation to support his finding.  Plaintiff

argues that he continued to meet the criteria of Listing 1.03 after July 18, 2007

because his doctor had advised him to use a cane (which he admittedly does not

use), he pushes a cart to get around when he goes shopping, and he does not

participate in activity because he has a hard time getting around.  (Dkt. 9).

Plaintiff testified at the hearing that he takes pain pills once or twice a week; can

lift about 20 or 30 pounds, but cannot walk carrying something; can sit for one to

one and a half hours at a time; can stand for 30 to 45 minutes; and can walk 100 to

200 yards before needing to sit down and take a break.  (Dkt. 7-2, Pg ID 41-43).

The Sixth Circuit has emphasized that ALJ's are not subject to a

"heightened articulation standard" in considering the listing impairments.  *Bledsoe*

*v. Barnhart*, 165 Fed. Appx. 408, 411 (6th Cir. 2006).  However, the ultimate

burden of proof of medical improvement lies with the Commissioner.  *Kennedy*,

247 Fed. App. at 765.  Thus, the ALJ's written decision must make sufficiently

clear the reasons for her decision.  *See Waller v. Astrue*, 2012 WL 6771844, at *3

(N.D. Ohio Dec. 7, 2012), *adopted by* 2013 WL 57046 (N.D. Ohio Jan. 3, 2013).

Here, the ALJ's cursory statement in her opinion that "[b]eginning on July 19, 2007, the claimant's non-union fracture had healed and he was fully weight-bearing, such that he no longer met the criteria for listing 1.03," fails to sufficiently articulate the reasons for her finding. *See Smith v. Comm'r of Soc. Sec.*, 2012 WL 4897364, at *7 (E.D. Mich. Sept. 14, 2012) (remand is necessary where the ALJ made no mention of the applicable listings and did not explain why the plaintiff's condition failed to meet the listings), *adopted by* 2012 WL 4900424 (E.D. Mich. Oct. 16, 2012).[2]

Even more egregious, the ALJ here wholly failed to address whether plaintiff's impairments were medically equal to a listing. It is the ALJ's obligation to determine whether plaintiff met *or medically equaled* a listing, and the Commissioner bears the burden of proof of medical improvement. Medical equivalent means that the impairment is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

Again, although "'Sixth Circuit case law does not required a heightened

---

[2]The undersigned notes that the Commissioner's motion contains some discussion of plaintiff's claims and plaintiff's use of a cane in support of a finding that plaintiff did not meet the criteria of Listing 1.03. However, the ALJ did not engage in that same analysis and "this court cannot engage in post-hoc rationalizations" but must judge propriety of the ALJ's decision solely by the grounds invoked by the ALJ. *Waller*, 2012 WL 6771844, at *4 (citations omitted).

articulation standard at step three of the sequential evaluation process,' . . . the regulations state that an ALJ should review all evidence of impairments to see if the sum of impairments is medically equal to a 'listed impairment.'" *See Waller*, 2012 WL 6771844, at *3 (citations omitted).  For meaningful judicial review, the ALJ must actually evaluate the evidence, compare it to the criteria of the listing, and give an explained conclusion.   *See Reynolds*, 424 Fed. Appx. at 416.  Absent such evaluation and explanation, the ALJ's finding that plaintiff's impairments did not equal a listing is not supported by substantial evidence, thus requiring a remand.  *Id.*; *see also Raymond v. Comm'r of Soc. Sec.*, 2012 WL 2872152, at *4 (N.D. Ohio June 4, 2012) (collecting cases where "this Court has reversed where the ALJ made unaffirmable cursory or summary declarations that a claimant did not meet or equal a listing without evidence of that effect from a medical expert or without an extensive, reviewable discussion on the record."), *adopted by* 2012 WL 2872462 (N.D. Ohio Jul. 12, 2012).

    In *Reynolds v. Commissioner of Social Security*, 424 Fed. Appx. 411 (6th Cir. 2011), the Sixth Circuit examined this same issue.  The ALJ in *Reynolds* ruled that the claimant suffered from both a physical and mental severe impairment.  *Id. at 415.*  At the third step in the disability analysis, the ALJ compared the claimant's impairments with specifically identified listings and concluded that neither impairment met or equaled listing level.  *Id.*  The ALJ explained why the

claimant's mental impairment did not meet the relevant listing, but failed to offer any commentary as to why the claimant's physical impairment did not meet or equal listing level. *Id.* In explaining the ALJ's error, the Court indicated that "the ALJ erred by failing to analyze Reynolds' physical condition in relation to the Listed Impairments[, p]ut simply, he skipped an entire step of the necessary analysis." *Id.* at 416. The Court explained that "the ALJ needed to actually evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facility meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* The Court remanded the case, finding that the ALJ's "hopelessly inadequate step three ruling" precluded meaningful judicial review. *Id*

The ALJ in this case has similarly provided no meaningful evaluation and explanation sufficient for meaningful review of her finding that plaintiff no longer met or medically equaled a listing after July 18, 2007. In light of the fact that plaintiff met the listing from May 18, 2006 through July 18, 2007, the ALJ must explain why plaintiff's impairments do not meet or medically equal a listing after that date. *See Cunningham v. Comm'r of Soc. Sec.*, 2012 WL 1035873, at *3 (N.D. Ohio Mar. 27, 2012).

In addition, medical opinion is necessary on the issue of equivalence because SSR 96-6p provides that "longstanding policy requires that the judgment

of a physician . . designated by the Commission on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight." *See Maynard v. Astrue*, 2012 WL 5471150, at *6 (E.D. Mich. Nov. 9, 2012) (citations omitted and quoting SSR 96-6p). While the expert opinion requirement can be satisfied by a physician's signature on the Disability Determination Transmittal Form, *Dorrough v. Comm'r of Soc. Sec.*, 2012 WL 4513624, at *11 (E.D. Mich. Aug. 10, 2012), *adopted by* 2012 WL 4513621 (E.D. Mich. Oct. 2, 2012), in this case, there is no such signature on the Disability Determination and Transmittal Forms. (Dkt. 7-3, Pg ID 50-52). "The great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand." *Dorrough*, 2012 WL 4513624, at *11 (collecting cases).

The ALJ's opinion deprives this Court of any ability to conduct a meaningful review as to whether the regulations were followed and whether plaintiff had an impairment after July 18, 2007 that met or medically equaled one of the listed impairments. The undersigned therefore **RECOMMENDS** that the plaintiff's motion for summary judgment be **GRANTED in part** and that the case be **REMANDED** so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence and for evaluation and explanation of the ALJ's decision on whether plaintiff's impairments meet or medically equal a listed

impairment after July 18, 2007.

### 2.      Substantial Evidence Supports the ALJ's RFC Finding

The ALJ found that beginning on July 19, 2007, plaintiff has the residual

functional capacity to perform the full range of sedentary work, but is "limited to

walking/standing no more than 1 and a half hours total out of an 8 hour work day;

no walking on uneven terrain; no ladder climbing; and no squatting, kneeling or

crawling.  Additionally, the [plaintiff] is limited to lifting and carrying no more

than 10 pounds."  (Dkt. 7-3, Pg ID 62-63).  In reaching this RFC, the ALJ gave

"[s]ignificant weight" to Dr. Swords' opinion, as plaintiff's long-term treating

physician, and weight to the opinions of Drs. Page and LaClair "as they are

experts in the field of orthopedics."  *Id.*

A claimant's RFC is considered "the most [a claimant] can still do despite

[his or her] limitations."  20 C.F.R. § 404.1545(a).  In assessing a claimant's RFC,

an ALJ must consider all relevant record evidence, including medical source

opinions on the severity of a claimant's impairments.  *See id.*  Here, the

undersigned finds that the ALJ did not err is weighing the medical evidence and

substantial evidence supports the ALJ's RFC assessment.

Plaintiff argues that the ALJ erred by giving "great weight" to Dr. Page's

opinion, because Dr. Page was not his treating physician but only examined

plaintiff one time, and Dr. Page indicated he specialized in hand surgery, not foot

surgery.  However, Dr. Page is board certified in orthopedics and his opinion is thus entitled to more weight.  *See* 20 C.F.R. § 404.1527(c)(5) (the ALJ will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than the opinion of a source who is not a specialist").  In addition, Dr. Page's opinion that plaintiff was limited to sit-down work for six months, with the additional restriction to avoid walking on uneven surfaces, is essentially the same as Dr. Swords' assessment of plaintiff's limitations after July 18, 2007 to perform sit-down only work for six months. (Dkt. 7-8, Pg ID 200-01; Dkt. 7-9, Pg ID 304).

Finally, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [his claimed] symptoms are not credible beginning on July 19, 2007, to the extent they are inconsistent with the residual functional capacity assessment . . . ."  (Dkt. 7-3, Pg ID 62).  The ALJ noted that Plaintiff testified that he can sit for one to one-and-a-half hours at a time, stand for thirty to forty-five minutes, walk 100 to 200 yards before needing a break, does not use a cane or other appliance to walk (although his doctor advised him to use one), is able to go shopping with his wife, while pushing a cart, and only takes pain medication one to two times a week.  (Dkt. 7-3, Pg ID 62-63).  The ALJ further noted that: (1) Dr. Swords opined that plaintiff could return to work in a sit-down job as of July 18, 2007, and that plaintiff was back to full weight

bearing and undergoing physical therapy; (2) Dr. Page also opined that plaintiff
could return to work in a sit-down job; and (3) Dr. LaClair opined that plaintiff
should be placed on permanent work restrictions. *Id.*

Plaintiff argues that the RFC does not reflect the need for plaintiff to elevate
his foot to relieve swelling.  However, plaintiff failed to identify any record
medical evidence in support of this limitation, other than that Dr. LaClair noted
that plaintiff has some pain control through activity modification (Dkt. 7-9, Pg ID
317), and instead relies solely on his own testimony to show that such a limitation
is required.  The record reflects that Dr. Swords did recommend that plaintiff
elevate his leg at times, but all of those recommendations were either immediately
before or after surgery, and all recommendations were made before July 19, 2007.
(Dkt. 7-7, Pg ID 142, 181; Dkt. 7-8, Pg ID 257).  There is no medical evidence or
other record evidence that any physician advised plaintiff elevate his foot after
July 19, 2007.

The ALJ found that plaintiff's subjective complaints were not fully credible.
(Dkt. 7-3, Pg ID 62).  *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476
(6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective
complaints and may properly consider the credibility of a claimant when making a
determination of disability.").  An ALJ is in the best position to observe witnesses'
demeanor and to make an appropriate evaluation as to their credibility.  Therefore,

an ALJ's credibility assessment will not be disturbed 'absent compelling reason.'"
*Reynolds*, 424 Fed. Appx. at 416-17 (internal citation omitted). "In making a
credibility determination, . . . the ALJ must consider the record as a whole,
including objective medical evidence; the claimant's statements about symptoms;
any statements or other information provided by treating or examining physicians
and other persons about the conditions and how they affect the claimant; and any
other relevant evidence." *Id.* (citing SSR 96-7p).

Here, the ALJ properly considered the record as a whole and all required
evidence in evaluating plaintiff's credibility. She also recognized plaintiff's
complaints of pain and physical limitations. However, she ultimately found that
plaintiff's claims regarding the frequency, intensity or duration of his symptoms
were not credible.

Thus, the undersigned **RECOMMENDS** that defendants' motion for
summary judgment be **GRANTED in part** and that the Court find that substantial
evidence supports the ALJ's residual functional capacity finding.

### 3.   The ALJ Improperly Applied the Medical-Vocational Guidelines Directly to Find Plaintiff "Not Disabled"

Once an ALJ had determined that plaintiff cannot perform his past relevant
work, the burden is on the Commissioner to show there are other jobs in
significant numbers in the economy the plaintiff can perform, consistent with his

34

RFC, age, education, and work experience. *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987); *Kennedy*, 247 Fed. Appx. at 764-65. The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, App. 2 (commonly known as "the Grid"), may be used, instead of vocational expert testimony, to show that a significant number of jobs exist in the economy when a claimant's characteristics fit the criteria of the Grid. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). The Grid is applicable only when all factors coincide with the elements of the guidelines. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Further, the Grid "take[s] account *only* of a claimant's 'exertional' impairment; that is, 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]'" *Kahee v. Comm'r of Soc. Sec.*, 2012 WL 1079887, at *6 (E.D. Mich. Jan. 19, 2012) (emphasis added, quoting 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e)), *adopted by* 2012 WL 1079883 (E.D. Mich. Mar. 30, 2012).[3] Because the Grid allows the ALJ to take administrative notice that jobs are

---

[3] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. . . . Nonexertional capacity considers any work-related limitations that are not exertional. Therefore, a nonexertional limitation is an *impairment-caused* limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions are also considered to be nonexertional." SSR 96-9p.

available in the national economy, most cases do not require a vocational expert whose testimony "would both be time-consuming and cost inefficient since the effort would only yield information already before the ALJ." *See Kirk*, 667 F.2d at 529.

However, if a plaintiff has both exertional and nonexertional limitations, the ALJ cannot rely solely on the Grid, but "must [instead] treat the Grid[] as only a framework for decision-making, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008); *see also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 282 (6th Cir. 1985). Reliance upon the Grid in the presence of nonexertional impairments requires some reliable evidence that the claimant's nonexertional impairments do not significantly limit the range of work permitted by his exertional limitations, such as through the testimony of a vocational expert. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *see also Kahee*, 2012 WL 1079887, at *7 ("[T]he ALJ inappropriately used the 'Grids,' since Plaintiff has nonexertional limitations. The ALJ should have consulted a vocational expert instead of applying the Grids.").

The ALJ here determined that, beginning on July 19, 2007, plaintiff could

perform sedentary work,[4] but with the following limitations: no walking on

uneven terrain, no walking/standing for more than one and a half hours during an

eight hour work day, no ladder climbing, and no squatting, kneeling, or crawling.

(Dkt. 7-3, Pg ID 62-63).  The ALJ's finding of these nonexertional limitations

confutes the ALJ's later ultimate conclusion that "[b]eginning on July 19, 2007,

based on a residual functional capacity for the full range of sedentary work,

considering the claimant's age, education, and work experience, a finding of 'not

disable' is directed by Medical-Vocational Rule 201.25."  (Dkt. 7-3, Pg ID 64).

The ALJ found that plaintiff had nonexertional impairments, but nevertheless,

admittedly, "directly" applied the Grid to find plaintiff not disabled.  (Dkt. 7-3, Pg

ID 63-64).  The ALJ did not consult a vocational expert in reaching his decision,

or cite to any other evidence in the record in support of his finding that plaintiff

can perform a significant number of jobs in the national economy.

The Commissioner concedes that the ALJ erroneously stated that plaintiff

was not disabled by *direct* application of the Grid because the ALJ found that

plaintiff had both exertional and nonexertional impairments.  (Dkt. 11, p. 18).

---

[4]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

Thus, the Commissioner argues, the ALJ should have applied the Grid as a framework. The Commissioner argues that this error is harmless, however, because, according to the Commissioner, "none of the non-exertional limitations would significantly reduce the sedentary occupational base." (Dkt. 11, p. 19). In reaching this conclusion, the Commissioner relies on Social Security Rule 96-9p, and argues that "*if* [the ALJ] had applied the Grid as a framework, she *would have* found Plaintiff not disabled." *Id.*

Contrary to the Commissioner's argument, this error is not harmless. First, the Commissioner's reliance on SSR 96-9p as support for the ALJ's improper direct application of the Grid is unavailing. The ALJ did not discuss the evidence or rationale set forth in the Commissioner's brief regarding SSR 96-9p, and under the *Chenery* doctrine this Court must confine its review to the grounds on which the ALJ made his finding. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943) (limiting agency counsel and the federal courts from evaluating the merits of an appeal based on a rationale not contained in the record). The Commissioner cannot cure a deficient opinion, as "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's 'post-hoc rationale' that is under the Court's consideration." *See Waller*, 2012 WL 6771844, at *3 (citing *NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715 n.1 (2001)).

The ALJ erroneously applied the Grid in reaching a conclusion of non-disability after July 19, 2007. "When the Grid is used as a framework the administrative law judge must either consult a vocational expert or demonstrate ample support in the record for the proposition that the significant nonexertional impairment at issue nonetheless only marginally reduces the occupational base." *Andrews v. Comm'r of Soc. Sec.*, 2009 WL 1505791, at *7 (E.D. Mich. May 27, 2009) (internal citation omitted); *see also Sherman*, 821 F.2d at 321 ("Reliance on the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations."). There is no finding by the ALJ that plaintiff's nonexertional limitations had little or no effect on the occupational base of sedentary work. Further, there is no evidence in the record that there are a significant number of jobs in the national economy plaintiff could perform with his limitations. The ALJ's decision is thus unsupported by substantial evidence.

"[C]ase law suggests that where, as here, the ALJ included nonexertional limitation in the RFC but relied on the grids without obtaining VE testimony, the case should be remanded." *See Anthony v. Comm'r of Soc. Sec.*, 2012 WL 4483790, at *27 (N.D. Ohio Sept. 27, 2012) (citing *Boley v. Astrue*, 2012 WL 680393, at *9 (E.D. Mich. Feb. 10, 2012), *adopted by* 2012 WL 680392 (E.D.

Mich. Mar. 1, 2012); *Rhone v. Astrue*, 2012 WL 3637647 (N.D. Ohio Aug. 6, 2012), *adopted by* 2012 WL 3637244 (N.D. Ohio Aug. 22, 2012); *Sweeney v. Astrue*, 2010 WL 5559134 (N.D. Ohio Dec. 8, 2010), *adopted by* 2010 WL 5464735 (N.D. Ohio Dec. 30, 2010); *Shelman*, 821 F.2d 316).

The undersigned **RECOMMENDS** plaintiff's motion for summary judgment be **GRANTED in part** and that this case be **REMANDED** to the ALJ for further development of the record, including vocational expert testimony, to determine whether–given the limitations the ALJ specifically placed on plaintiff in her RFC determination–plaintiff can perform unskilled jobs existing in significant numbers in the national economy.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED in part**, that defendant's motion for summary judgment be **DENIED in part**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 11, 2013              s/Michael Hluchaniuk
                                     Michael Hluchaniuk
                                     United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 11, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Richard J. Doud, Susan K. DeClercq, AUSA, and the Commissioner of Social Security</u>.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov

42